# Lowman Bros. v. Excelsior Stove Pattern Co.

## *Action of Assumpsit.*

1. *Sale of stove patterns; does not include the right to manufacture and sell a part of the stove that is patented.*—The sale of stove patterns, which are used by stove manufacturers to reproduce all the parts of a stove in accordance with certain designs, does not include the right to manufacture and sell a part of a stove, made from such patterns, which was patented, and which right the vendor had no authority to sell and about which he made no representations.

2. *Same; the fact that a part of the stove was patented no defense to action for purchase price*—Where, in an action to recover the purchase price of stove patterns, it is shown that the patterns were ordered from the plaintiff by defendant from photographs showing the appearance of the stoves manufactured from said patterns, without inquir-

ing as to whether any parts of the stoves so made were patented, and there were no representations or statements made by the vendor as to whether there were any patent rights attaching to the stoves or any parts thereof to be so made, the fact that a certain part of the stoves to be manufactured from said patterns was patented, constitutes no defense to the action; such sale and purchase impliedly warranting no more than that the patterns selected by the defendant were suitable for the purpose of manufacturing the stoves, as shown by the photographs.

APPEAL from the City Court of Bridgeport.

Tried before the Hon. WILLIAM L. STEPHENS.

This action was instituted on August 6, 1892, by the appellee corporation, the Excelsior Stove Pattern Company, against the appellants, B. J. and E. H. Lowman, doing business under the firm name of Lowman Brothers; and sought to recover an amount alleged to be due to the plaintiff for certain stove patterns, which had been sold by it to the defendants.

The plaintiff is a foreign corporation, and was engaged in the business of manufacturing stove patterns, which are devices consisting of all the parts and pieces of a stove, properly molded, filed and fitted, so that they may be used by manufacturers of stoves in reproducing all the parts of the stove with the aid of "sand flasks," into which the patterns are placed and then removed, leaving the exact impression of the pattern in the sand, into which molten iron is run and molded into the different parts of a stove. The pattern lacks the holes for the rivets and bolts, and is in no sense a stove proper. The defendants are manufacturers of stoves for sale.

There was no substantial conflict in the evidence adduced on the trial, as shown by the bill of exceptions; and the facts disclosed therein are as follows: In response to a letter from the defendants, the plaintiff answered as follows: "Detroit, Mich., June 2, 1891. Lowman Bros., Bridgeport, Ala. Gentlemen:—Your favor of the 25th at hand, and in reply will quote you the following prices in the patterns you specify, size one, 16, Coal Cook, with 7" top; One 15 Coal Cook, with 8" top; One 15 Wood Cook with 7" top; One 30 Wood Cook with 8" top, for the sum of one hundred dollars ($100.00) per size, or four hundred dollars ($400.00) for the lot, this price is for the pattern castings in the

rough ; or we will furnish you the pattern filed and fitted, waxed and follow boarded for seven hundred and fifty-five dollars ($755.00). Those patterns will be all ready for you to make stoves from, and the price quoted give it as low as we can make them to you,.and we are sure the price will meet your approval. Hoping it will be to your advantage to place your order with us, we are, Yours truly, Excelsior Stove Pattern Co. Per C. D.A."

The defendants responded to this letter as follows : "Bridgeport, Ala., June 10, 1891. Excelsior Stove Pattern Co., Gentlemen :—Yours of the 2nd to hand. You do not give weights of patterns. If weights are all right, and you can give us ninety days on one half of the bill, we will give the order. Please let us have the weights and terms soon as possible. Now, we understand the price is for stove as shown in photo. Awaiting your reply, we are, Yours &c. Lowman Bros." To this last letter of the defendants the plaintiff responded as follows : "Detroit, Mich., June 17th, 1891. Lowman Brothers, Bridgeport, Ala. Gentlemen :—In reply to your favor of the 10th we give you the weights of square and reservoir stoves, as shown in photographs, which we will mail under another cover. [Here follows enumeration of weights referred to]. In regard to the proposition you make concerning payments, we see no reason at present why we can not give you the 90 days on one-half of the bill, the other half to be cash. Awaiting your further order, we are, Yours truly, Excelsior Stove Pattern Co. Per C. D. A." . This proposition was accepted for the patterns at $755. The photographs of the finished stoves furnished to the defendants, and which were referred to in the above correspondence, showed that each of the several stoves had on it a "kicker", a device for opening the door of the stove by using the foot. The plaintiff manufactured and delivered to the defendants the patterns for all of the stoves, and all of the parts thereof, including the pattern for the "kicker". The "kicker" is in one piece, molded separately, as are all the other pieces of the stove, and the patterns for the bottoms of the stoves contained "fittings" through which the "kicker" is attached to the stoves by means of a rivet. It was shown that all the patterns manufactured by the plaintiff corporation have fittings for attaching the "kicker" to the stoves.

[Lowman Bros. v. Excelsior Stove Pattern Co.]

After the receipt of the patterns, the defendants proceeded to manufacture flasks, necessary for the use of the patterns, and expended in this way the sum of $240. The patterns were not perfectly filed and fitted when received, as was provided in the contract, and the defendants were under the necessity of expending $28 in so perfecting the patterns, before they were ready for use. After these expenditures were made, and they were proceeding to use the patterns, the defendants learned for the first time that the "kicker," for which they had purchased the patterns, was patented by other parties than the plaintiff, and that the plaintiff corporation could convey no authority to use the "kicker" on the stoves that would be manufactured by the defendants. The defendants thereupon called attention of the plaintiff corporation, without delay, to the fact that the "kicker" was patented. The plaintiff responded by saying: "Every one in the stove business knows that the 'kicker' is patented. We only sell the patterns, not any patent rights." There had never been any questions raised by the patentee as to the right of the plaintiff to make and vend patterns for the "kicker." In the correspondence negotiating and consummating the purchase of said patterns, no mention was made of the "kicker," or any other part of the stove patterns, as shown by the photographs. The defendants immediately took the patterns out of the sand, and notified the plaintiff that they were subject to the plaintiff's orders, that they would not take them, without the right to manufacture the "kicker." Defendants have since held the patterns subject to plaintiff's orders. The "kicker" was a valuable feature in procuring the sale of the stoves to be manufactured, and was the chief point of advantage over other patterns. The evidence further showed that after the defendants had made complaint that the "kicker" was patented, plaintiff proposed to compromise the matter by furnishing a different style of kicker pattern, just as good as the one furnished, which was not patented. The value of the patterns without the use of the "kicker" would be one-half the contract price. On account of the failure to use the patterns, the defendants lost the profits on sales of stoves manufactured therefrom, during the running season following, the period of six weeks, during which time the profits on sales would have amounted

[Lowman Bros. v. Excelsior Stove Pattern Co.]

to $300 per month. The defendants, at the time of receiving the patterns, made no objections to any defects in them, and never, at any time, made any complaint to the plaintiff, except to the fact that the "kicker" was patented, and they had acquired by the purchase no right to manufacture the same as a part of the stoves. The pattern sent for the "kicker" was not a complete "kicker" as it lacked the hole for the bolt, to fasten to the stove.

The cause was tried without the intervention of a jury, and upon the hearing of all the evidence the court rendered judgment in favor of the plaintiff, and the defendants duly excepted to the rendering of such judgment. The present appeal is prosecuted by the defendants from said judgment, which is here assigned as error.

MARTIN & BOULDIN, for appellant.—1. In all sales of chattels, the seller warrants that he has the property in the thing sold. There is an implied warranty of title. He warrants that he conveys a good title.—*Cozzins v. Whitaker*, 3 Stew. & Por. 322 ; *Ricks v. Dellahunty*, 8 Por. 133 ; *Williamson v. Sammons*, 34 Ala. 691.

2. There was a breach of the contract of sale. Where a party sells a thing for a special use, there is an implied grant of the rights of user, for the purpose for which it was sold. The purchaser of the patent obtains the right to use the thing purchased and to vend its product ; hence in the sale involved in this case, the plaintiff made an implied grant of the license to manufacture and use the patent, including the patented device ; and such grant failing, there was a breach of warranty.—13 Amer. & Eng. Encyc. of Law, 504, 561 ; 10 Amer. & Eng. Encyc. of Law, 124 ; *Hapgood v. Hewitt*, 119 U. S. 226 ; *Pacific Iron Works v. Newhall*, 34 Conn. 67.

3. Such a sale was an infringement of the rights of the patentee—in violation of law, and therefore void—arming the purchaser with a right to rescind on that account. It is infringement to furnish means by which a device becomes and is intended to become an infringement. This intention may be shown either by the actual fact of intention, or by putting on the market an article which would be useless, unless used with some other articles to make up a patented device.—10 Amer. & Eng. Encyc. of Law, 751 ; *New York Bung. &c. v. Hoffman*, 20 Blachford (U. S.) 3 ; *Boyd v. Cherry*, 4 McC. (U. S.) 70 ; *Travers v. Boyer*, 26 Fed. Rep. 450.

R. C. Hunt, *contra.*—The sale of the patterns in this case included no right to manufacture and sell the device known as the "kicker," which was patented. The patent right to manufacture and vend "kickers" is not appendant or appurtenant to a "kicker" pattern, "but a distinct and independent property subsisting in a grant from the government of the United States not annexed to anything, either by the act of the owner or by operation of law."—*Stevens v. Gladding & Proud*, 17 How. 447; *Stephens v. Cady*, 14 How. 528.

COLEMAN, J.—The complaint is in the common form, for work and labor done, and for goods, wares and merchandise sold and delivered. The defense was the general issue, and special pleas setting up a contract between the parties, and containing averments of non-performance by the plaintiff, a rescission by the defendants, also damages which the defendants claimed in recoupment. The case was tried by the court, without a jury, and verdict given for the plaintiff for the full amount claimed. The evidence is set out in the bill of exceptions, and there is no material conflict. It appears that the plaintiff, the Excelsior Stove Pattern Co., was a manufacturer of stove patterns, and the defendants were manufacturers of stoves. The contract of the parties is in writing, evidenced by a letter of plaintiff June 2d, 1891, the reply of the defendants June 10th, 1891, and the reply of the plaintiff June 17th, 1891, which are set out in the statement of facts.

The proposition as contained in plaintiff's first letter, to furnish the patterns for $755, was accepted, and the patterns were manufactured and forwarded to the defendants, and were received by them. It appears from the evidence that the patterns furnished by the plaintiff had as a part, what is called a "kicker" a "device for opening the door of the stoves by the use of the foot." After the patterns were received, and the defendants had expended several hundred dollars in their preparation to manufacture the stoves, they learned that the "kicker" was patented, and that the plaintiff had no authority to sell the right to use the "kicker" in the manufacture and sale of stoves, and that the "kicker" added materially to the value of stoves manufactured after this pattern. The decision of the case requires a construction of the

contract, and an ascertainment of the rights and liabilities of the parties under the contract. No one can sell and convey a title to property unless he is the owner or the representative of the owner. That the vendor did not own the patent to the "kicker," and did not represent the patentee in the sale of the patterns to the defendants, is not controverted. It is evident that the purchasers, by their purchase from plaintiffs, acquired no right to manufacture and vend stoves with the "kicker" attached. It is also clearly proven, that at the time of their purchase, the defendants had no notice that the right to manufacture and sell the "kicker" attachment was a patent franchise belonging to third parties, the right to vend which was not acquired by their purchase. This want of knowledge in no way could affect the title or right of the real owner of the patent. As against the real owner the purchaser of a patent purchased from any other person, or his agent, buys at his own risk.

As between the vendor and vendee the general rules apply. This rule is stated in 2 Kent. Com., p. 478, as follows : "In every sale of a chattel, if the possession be at the time in another, and there be no covenant or warranty of title, the rule of *caveat emptor* applies, and the party buys at his peril. But if the seller has possession of the article, and he sells it as his own, and not as agent for another, and for a fair price, he is understood to warrant the *title*. A fair price implies a warranty of title ; and the purchaser may have a satisfaction from the seller, if he sells the goods as his own, and the title proves deficient."—2 Kent Com., p. 478. A patent franchise does not admit of tangible possession, which may be seen by a purchaser, but the principle of express or implied warranty can be applied in sale of patents.

There is no doubt that the defense would be made out if the plaintiff had sold or agreed to sell the right to manufacture and sell the "kicker" which was a patented article, but the question is, whether the sale of the patterns, by the use of which the patented article could be manufactured included a sale of the right to manufacture and sell the patented article.

It seems to us that the implied warranty was that the patterns were suitable for the manufacturing of the stoves with the "kicker," and that it would answer the purpose for which it was sold, and that was, that the purchaser

would be able to manufacture the cooking stoves according to the pattern, but did not include more. The right to manufacture and sell such stoves, was a right independent of the suitableness of the patterns. We do not think the contract for the sale of the patterns, expressly or impliedly included also a sale of the right to make and sell the stoves. The defendants selected the style of pattern they preferred and ordered it. The pattern was made according to order. They received what they purchased. When a purchaser gets what he bargains for, and there is no warranty and no fraud, upon what grounds can he rescind the contract? The owner of a patent franchise may sell to one person the authority to manufacture the patent, to another the authority to sell it, when manufactured, and to another the right to use it.—2 Robinson on Patents, § 763. A sale of either power enumerated does not include the other. The defendants in the present case might have purchased from the patentee the right to manufacture and sell the "kicker," and yet have deemed it necessary, or to their interest to manufacture the stove with the "kicker," by the use of the patterns manufactured by plaintiff. It did not concern the plaintiff to inquire whether the defendants had the right to manufacture and sell stoves with the "kicker" or not. All they were interested in, as manufacturers of the pattern, was to ascertain whether the purchasers were able to comply with their purchase. If the defendants in this case had purchased from the patentee, the right to manufacture and sell the "kicker" they would be under the same necessity to use patterns in the manufacture of stoves with the "kicker." If they had owned the right when the patterns were ordered, their liability would be unquestioned. Of course, if the vendors represented that they had the right to authorize the purchasers to manufacture and sell the "kicker," or if they represented that the "kicker" was not patented, and the defendants were induced to make the purchase, by any such false representations, the plaintiff ought not to recover. As we have stated, the whole contract is in writing, and included in a correspondence. As we construe this correspondence the plaintiffs, being manufacturers of patterns, send out copies or plates of their different styles. From these the defendants made a selection of a pattern. The price was agreed upon, and

the patterns were made and shipped, according to the agreement. No enquiries were made by the purchasers as to whether the "kicker" was patented or not, and no representation was made by the vendor which would imply that with the sale of the patterns they also sold the right to manufacture and sell the patented "kicker."

The direct proposition involved is, whether a manufacturer of stove patterns or moulds, who has models or photographs of different styles, which he offers to manufacture, one of which is selected by a company engaged in the manufacturing and sale of stoves, and which gives an order for a number of patterns of the kind selected, without enquiring whether any part of the stove made after the pattern is patented, and there are no representations or statements by the vendor in regard to the matter, by a sale of the patterns impliedly warrants to the purchaser, not only a suitableness of the pattern for the purposes of manufacturing stoves, but in addition thereto warrants, that the purchaser acquires the right to manufacture and sell the stoves manufactured by the patterns; in other words, that no part of the stove is subject to a patent? We think not.

We lay no stress upon the argument that the patterns were otherwise defective, requiring an expenditure of $28 before they could be used. The defendants base their sole objection to the patterns upon the ground, that by their purchase, they did not obain the right to make and sell the "kicker." No other objection was urged to the patterns. The matter of the expense of $28 was clearly an afterthought, brought forward at the trial. We find no error in the record.

Affirmed.